A98A0562. SMITH v. TOYS "R" US, INC. et al.
(504 SE2d 31)

BEASLEY, Judge.

After a slip and fall at a Toys "R" Us store two years earlier, Smith sued the store's corporate owners in negligence for failing to keep the premises and approaches of the store in a safe condition. She challenges the grant of defendants' motion for summary judgment. The evidence is viewed in favor of the non-movant.

On August 26, 1994, Smith drove to the store where she had shopped numerous times. Midway through the one and one-half hour trip from her workplace, a hard driving rain developed. Although the rain had abated to a sprinkle when Smith arrived at the store around

---

11:00 a.m., the wind was still blowing, the parking lot and pavement were wet, and one or two puddles of water may have been present. Smith walked through the main entrance into a vestibule where shopping carts were lined up a few feet inside. Carts are brought in from the parking lot the night before and as needed. According to Smith, the doors were in a fixed open position.

Smith was looking at the ground and saw no moisture when she entered the store. She looked up as she reached for a shopping cart, slipped in what she described as a one-inch deep puddle of water which splashed as she stepped in it, and fell. She wore flat leather-soled shoes. Smith testified that the puddle could not readily be seen because of existing light conditions in combination with the color of the floor. The door mat, according to her, was out of place.

Management personnel testified that the store is routinely swept and mopped at opening and closing, and store areas such as the front are routinely inspected every hour or two. There is maintenance throughout the day by a maintenance employee, and "all management surveys the entire store all through the day." Two management personnel are on duty at all times. The store does not have a policy that inspection be done at specific times. Although there is some sort of maintenance schedule, no record was presented. There is evidence of a mid-day sweep of the whole front of the floor any time something must be cleaned up.

The store manager testified he had inspected the vestibule when the store opened that morning, which was at 9:30 a.m. According to these witnesses, the entrance doors were not locked in an open position at the time Smith fell but opened and closed automatically when someone entered, and there was a mat at the entrance. The wind blew directly into the building as the doors opened and closed.

*Alterman Foods v. Ligon*[1] held that "in order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." *Robinson v. Kroger Co.*[2] words the second requirement somewhat differently: "that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." Summary judgment in this case was expressly based on plaintiff's failure to

---

[1] 246 Ga. 620, 623 (272 SE2d 327) (1980).
[2] 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

satisfy either prong of the *Alterman Foods* test.

Under *Robinson*,[3] a slip-and-fall plaintiff's burden of coming forward with evidence disproving his or her negligence arises only after it has been established or assumed that the defendant had actual or constructive knowledge of the hazard, and the defendant presents evidence that the plaintiff's injuries were proximately caused either by plaintiff's voluntary or casual negligence. At the same time, the Supreme Court reiterated in *Robinson* "that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed."[4]

1. There is no evidence that Toys "R" Us, or Smith for that matter, had actual knowledge of the puddle of water on which plaintiff slipped and fell. That leaves open the possibility of constructive knowledge.

" 'There are two different classes of (premises liability) cases which may be based on constructive knowledge. The first is that type where liability of the defendant is based on the fact that an employee of the defendant was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard. (Cits.)' "[5] Such evidence is absent here.[6]

" 'The second type of case is that based on the duty of the defendant to exercise reasonable care in inspecting and keeping the premises in safe condition. (Cits.) To sustain plaintiff's cause of action in the latter case it is necessary that he prove "a period of time the dangerous condition has been allowed to exist. Without such (proof) it would not be possible to determine whether the defendant had been afforded a reasonable time within which to inspect and remove the hazard." (Cit.)' [Cits.] . . . [T]he defendant, as the movant for summary judgment, has the burden 'to show that, as to its lack of constructive knowledge under either theory, no genuine issue remained.' [Cit.] . . . ' "A lack of actionable constructive knowledge is normally established in ( . . . inspecting and keeping . . . in safe condition) cases by evidence of compliance with reasonable inspection and/or cleaning procedures. (Cits.) . . ." (Cit.)' [Cit.] Evidence establishing an adherence to customary inspection and cleaning procedures on the specific day in question is required, while proof of the mere exis-

[3] Id. at 748.
[4] Id.
[5] *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 429 (1) (408 SE2d 443) (1991).
[6] Compare *Rodriguez v. Piggly Wiggly Southern*, 185 Ga. App. 79 (363 SE2d 291) (1987).

tence of such customary procedures is insufficient. [Cit.]"[7]

Construed in a light most favorable to Smith,[8] the evidence would authorize a jury to find there was an unduly heavy accumulation of water due to open entrance doors on a rainy day with a blowing wind, and that by not inspecting the entrance area from the time the store opened at 9:30 a.m. until the patron fell about 11:00 a.m., the proprietor failed to follow reasonable inspection procedures which would have revealed the water on the floor. Particularly considering the amount of water plaintiff says was present, a jury would be authorized to infer that the water had been allowed to collect on the floor over an unreasonable length of time, as customers entered with wet shoes and rainwater blew in. A jury could thus find that defendant had constructive or imputed knowledge of the hazard. The trial court's grant of summary judgment to the defendant was based on the erroneous conclusion that, as a matter of law, the inspection procedures described by the defendants' witnesses were reasonable and thus discharged the proprietor's duty as prescribed in OCGA § 51-3-1.

*Gibson v. Consolidated Credit Corp.*[9] and subsequent cases[10] hold that store proprietors are not liable to patrons who slip and fall on floors made wet by rain conditions where there has been no unusual accumulation of water and the proprietor has followed reasonable inspection and cleaning procedures. As do *Alterman Foods* and *Robinson, Gibson* and the cases following it recognize that the proprietor is not an insurer of its invitees' safety and the true ground of its liability is its superior knowledge of the hazard.[11] As stated in *Gibson,* " '[i]t is a matter of common knowledge that some water would normally be present at a place where shoppers continually pass in and out during rainy weather.' "[12] " 'It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or

---

[7] *Mallory,* supra at 429-430.
[8] *Maxwell v. Mayor &c. of Savannah,* 226 Ga. App. 705, 707 (1) (487 SE2d 478) (1997).
[9] 110 Ga. App. 170 (138 SE2d 77) (1964).
[10] *Colbert v. Piggly Wiggly Southern,* 175 Ga. App. 44, 45 (1) (332 SE2d 304) (1985); *Hagin v. Winn-Dixie Stores,* 180 Ga. App. 303 (348 SE2d 766) (1986); *Chafin v. Winn-Dixie Atlanta,* 201 Ga. App. 209 (411 SE2d 64) (1991); *Winn-Dixie Atlanta v. Bianco,* 204 Ga. App. 292 (418 SE2d 819) (1992); *Palermo v. Winn-Dixie Atlanta,* 221 Ga. App. 532 (472 SE2d 85) (1996); *Camp v. Winn Dixie Stores,* 225 Ga. App. 626 (484 SE2d 349) (1997); see *Adams v. Winn-Dixie Stores,* 192 Ga. App. 892 (386 SE2d 686) (1989). In the first six cases, the evidence was undisputed that defendant had mopped the floor shortly before plaintiff's fall. In *Adams,* "wet floor" signs were up and periodic inspections occurred. See also *Cook v. Arrington,* 183 Ga. App. 384 (358 SE2d 869) (1987) (rain had stopped for some time, store traffic light, no moisture observed).
[11] *Gibson,* supra at 173 (2); *Robinson,* supra at 736, 740, citing *Alterman Foods.*
[12] (Emphasis omitted.) *Gibson,* supra at 175 (2).

clothing or umbrellas. . . .' "[13] The previously described circumstances of this case distinguish the *Gibson* line of cases in that, for one thing, there is no proof of inspection between 9:30 a.m. and 11:00 a.m., when plaintiff fell.

2. With respect to the second prong of *Alterman Foods*, " ' "the customer must exercise ordinary care for [her] own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to [her] *or* in the exercise of ordinary care [she] should have learned of it. . . ." ' [Cit.]"[14]

Ordinary care requires the invitee to "use all senses to discover and avoid hurtful things. [Cit.] ' "The established standard is whether, taking everything into account, the act is one which the common sense of mankind pronounces want(s) of such prudence as the ordinarily careful person would use in a like situation." ' [Cit.]"[15]

Given the evidence, it is a jury question whether Smith failed to exercise ordinary care for her own safety. Her testimony "that [she] was not looking directly at the floor at the time [she] fell because [she] was [reaching for a shopping cart] does not alone show [she] was not exercising ordinary care. [Cit.] 'Looking continuously, without intermission, for defects in a floor is not required in all circumstances. What is a reasonable lookout depends on all the circumstances at the time and place.' [Cit.]"[16] Equal knowledge of both parties as to weather conditions does not bar recovery, as would the invitee's knowledge of the specific hazard which caused a fall.[17] Although it can be said that both parties had constructive knowledge that the weather conditions would produce a wet floor at the store's entrance, as the evidence now stands defendant but not plaintiff knew that, as of 11:00 a.m., wetness had not been checked since 9:30 a.m. Plaintiff, on the other hand, could assume that the owner/operator was keeping the premises safe.[18]

In this case, the fulfillment of either party's respective obligations is not settled as a matter of law. Balancing this and the competing rights of one against the other is the task of a factfinder.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

---

[13] Id. at 174.

[14] (Emphasis in original.) *Piggly Wiggly Southern v. James*, 225 Ga. App. 846, 847 (485 SE2d 223) (1997).

[15] *Robinson*, supra at 741.

[16] *Chaves v. Kroger, Inc.*, 213 Ga. App. 348, 350 (444 SE2d 606) (1994); see *Robinson*, supra.

[17] *Rodriguez*, supra at 80; *Powell v. Woodridge Condo. Assn.*, 206 Ga. App. 176 (424 SE2d 855) (1992); but see *Key v. J. C. Penney Co.*, 165 Ga. App. 176 (299 SE2d 895) (1983).

[18] *Robinson*, supra at 740-741.

DECIDED JULY 1, 1998.

*Sell & Melton, Mitchel P. House, Jr., Robert D. McCullers*, for appellant.

*Hawkins & Parnell, Warner S. Fox, Wade H. Coleman, Jr.*, for appellees.