**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 19, 2022**

# In the Court of Appeals of Georgia

A22A0730. JULIE B. HAZARD v. MEDLOCK TAVERN, INC. d/b/a OLD FOUNTAIN TAVERN.

DILLARD, Presiding Judge.

Julie B. Hazard appeals from the grant of a motion for summary judgment filed by Medlock Tavern, Inc. d/b/a Old Fountain Tavern in her suit for damages that she sustained after a slip-and-fall incident. In doing so, she argues the trial court erred in granting summary judgment when genuine issues of material fact remain. We agree and, for the reasons set forth *infra*, reverse the trial court's judgment.

Viewed *de novo* in the light most favorable to Hazard (*i.e.*, the nonmovant),[1] the record shows she was a regular customer at the Tavern (located in Dacula, Georgia), typically frequenting the establishment two times per week. As a result, she had previously visited and entered the Tavern on occasions when it was raining outside. And during the evening in question, on December 14, 2018, Hazard entered the Tavern around 5:15 p.m.,[2] and it began raining shortly before her arrival. When she walked into the Tavern, she did not notice any standing water on the floor.

The Tavern was busy at the time Hazard arrived and so, rather than sit down at her own table, she walked around and spoke with other regular patrons at their tables. One of those other patrons was a friend who arrived an hour or more after Hazard, and who described the weather conditions at that time as a "torrential downpour." Indeed, upon her own arrival, the other patron slipped—but did not fall—on the entry mat. This patron described the restaurant's entry area and mat as

---

[1] *See, e.g.*, *Hayward v. Kroger Co.*, 317 Ga. App. 795, 795 (733 SE2d 7) (2012) ("On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the non-movant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law.").

[2] The Tavern has one set of doors for entry and exit, and the path leading from these doors to the bar area is covered by a long, slip-resistant mat.

a "soaking mess," but she could not recall seeing any wet-floor signs in the vicinity. And after slipping on the mat, the patron informed a bartender of this hazardous condition and told him that "somebody was going to get hurt" unless the issue was addressed. The bartender was apparently unfazed by this news, and replied that he and the other employees were too busy taking care of customers at the bar to do anything about it.

After approximately two-and-a-half hours of visiting with other customers, and approximately 30 to 50 minutes after her friend arrived and slipped on the entry mat, Hazard decided to leave the premises. And upon approaching the exit, Hazard did not see a wet-floor sign, nor did she notice any standing water on the floor. So, as she was preparing to leave, Hazard stepped onto the mat leading to the exit, but she then stepped off when she heard a friend greet her. In doing so, she turned around and "stepped into [a] puddle and went down." Importantly, at no point during her fall did she bump into or notice a "wet floor" sign.

As friends helped her get up, Hazard realized there was water on the floor. Indeed, her foot and pants were wet as a result of a puddle she described as the size of a manhole cover. Hazard—whose arm was now in serious pain—then went home. She visited the emergency room the following day and was diagnosed with a

fractured humerus in her right arm, and months of recovery and physical therapy then followed.

On December 23, 2019, Hazard filed a complaint for damages against the Tavern, alleging that its negligence and the negligence of its employees caused her to fall and sustain injuries. The Tavern denied responsibility, and subsequently moved for summary judgment in its favor. Initially, the trial court denied the Tavern's motion for summary judgment. But the Tavern then filed a motion for reconsideration and, in the interim, deposed the other patron (for whom Hazard had previously submitted an unsworn statement).[3] The trial court eventually granted the Tavern's motion for reconsideration, vacated its prior denial of the motion for summary judgment, and granted summary judgment in favor of the Tavern.

On appeal, Hazard argues the trial court erred in granting summary judgment in favor of the Tavern because witness testimony presented genuine issues of material fact. More specifically, Hazard contends that testimony from another patron that she

[3] *See Fairview Park, Ltd. P'ship v. Roddenberry*, Case No. A22A0821, 2022 WL 2070947, at *3 (2) (Ga. Ct. App. June 9, 2022) ("Evidence offered on motion for summary judgment is held to the same standards of admissibility as evidence at trial, and evidence inadmissible at trial is generally inadmissible on motion for summary judgment." (punctuation omitted)); *Benson v. Asset Acceptance, LLC*, 310 Ga. App. 1, 2 n.1 (712 SE2d 83) (2011) (same).

slipped on a wet mat less than an hour before Hazard's fall was evidence the Tavern had actual, superior knowledge of the dangerous condition. We agree.

When a business owner or occupier "expressly or impliedly invites patrons to enter its establishment, such owner or occupier is required to exercise ordinary care in keeping the premises safe for invitees and may be held liable in damages for failure to do so."[4] But importantly, if an invitee falls and the "fall is caused by a natural occurrence, the risk of which the invitee should appreciate, the owner/occupier may be held liable only if the risk has become unreasonable."[5] And as the Supreme Court

[4] *Roberts v. Outback Steakhouse of Fla., Inc.*, 283 Ga. App. 269, 269 (641 SE2d 253) (2007); *see* OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."); *Rozy Invs., Inc. v. Bristow*, 276 Ga. App. 278, 280 (4) (623 SE2d 171) (2005) ("[O]ne who owns or occupies land and by express or implied invitation, induces or leads others to come upon his premise for any lawful purpose, is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." (punctuation omitted)).

[5] *Roberts*, 283 Ga. App. at 269; *see Leibel v. Sandy Springs Historic Cmty. Found., Inc.*, 281 Ga. App. 390, 392 (636 SE2d 27) (2006) ("In a series of cases involving slips and falls on water on rainy days, and on leaves on fall days, and on ice in winter weather, we have held that where the accumulation of such substances on a premises is naturally occurring and not attributable to any affirmative action on the proprietor's part, the proprietor has no affirmative duty to discover and remove it in the absence of evidence that it had become an obvious hazard by means other than natural accumulation." (punctuation omitted)).

of Georgia has explained, a "proprietor may be liable only if he had superior knowledge of a condition that exposed an invitee to an unreasonable risk of harm."[6]

It is, of course, common knowledge that "during rainy weather some water will normally be present where [invitees] enter a building."[7] As a result, store proprietors are "not liable to patrons who slip and fall on floors made wet by rain conditions unless there has been an unusual accumulation of water and the proprietor has failed to follow reasonable inspection and cleaning procedures."[8] Indeed, it is not the duty of persons in control of such buildings to "keep a large force of moppers to mop up

---

[6] *Dickerson v. Guest Servs. Co. of Va.*, 282 Ga. 771, 772 (653 SE2d 699) (2007) (punctuation omitted); *see Diaz v. Wild Adventures, Inc.*, 289 Ga. App. 889, 891 (658 SE2d 362) (2008) ("A plaintiff cannot recover on a premises liability claim unless the defendant had superior knowledge of the hazard . . ." (punctuation omitted)).

[7] *Camp v. Winn Dixie Stores, Inc.*, 225 Ga. App. 626, 626 (484 SE2d 349) (1997) (punctuation omitted); *see Smith v. Toys R Us, Inc.*, 233 Ga. App. 188, 191 (1) (504 SE2d 31) (1998) ("[I]t is a matter of common knowledge that some water would normally be present at a place where shoppers continually pass in and out during rainy weather." (punctuation omitted)).

[8] *Hayward*, 317 Ga. App. at 800 (3) (b) (punctuation omitted); *accord Walker v. Sears Roebuck & Co.*, 278 Ga. App. 677, 680 (1) (629 SE2d 561) (2006). *Cf. Cook v. Arrington*, 183 Ga. App. 384, 385 (358 SE2d 869) (1987) ("The risk of harm imposed by *some* accumulation of water on the floor of business premises during rainy days is not unusual or unreasonable in itself, but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate." (punctuation omitted) (emphasis supplied)).

6

the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas."[9]

Finally, in order to recover for injuries sustained in a slip-and-fall action, an invitee must prove "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[10] But the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant "establishes negligence on the part of the plaintiff—i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known."[11]

Here, the trial court erred in ruling that Hazard failed to present evidence that

---

[9] *Smith*, 233 Ga. App. at 191-92 (1) (punctuation omitted); *accord Walker*, 278 Ga. App. at 680 (1); *Cook*, 183 Ga. App. at 385; *Alterman Foods, Inc. v. Munford*, 178 Ga. App. 214, 214 (342 SE2d 480) (1986).

[10] *Robinson v. Kroger Co.*, 268 Ga. 735, 749 (2) (B) (493 SE2d 403) (1997); *accord Edwards v. Ingles Mkt., Inc.*, 234 Ga. App. 66, 66 (506 SE2d 205) (1998).

[11] *Robinson*, 268 Ga. at 749 (2) (B); *accord Edwards*, 234 Ga. App. at 66.

the Tavern had actual or constructive knowledge of a hazard—*i.e.*, an *unreasonable* accumulation of water. As previously noted, Hazard presented evidence that, 30 to 50 minutes before her fall, another patron arrived, slipped on what she described as a "soaking mess" on the mat, and informed an employee that "somebody was going to get hurt" unless this hazardous condition was addressed. This, combined with Hazard's testimony that her clothes were wet as she got up from a puddle the size of a manhole cover beside the mat, presented sufficient evidence to create a genuine issue of material fact as to whether the Tavern had actual or constructive knowledge of an unreasonable accumulation of water on or around the entry mat.[12]

_____

[12] *See Dickerson*, 282 Ga. at 773-74 (holding that summary judgment in favor of property owner was erroneous because there was evidence to create a genuine issue of material fact as to whether property owner had superior knowledge of hazard when the plaintiff's daughter warned an employee about stairs that were wet due to inclement weather "some time" before her mother's fall); *Edwards*, 234 Ga. App. at 67 (1) (concluding there was evidence to establish defendant had actual knowledge of puddle in issue when testimony showed another patron warned a manager about same 15 minutes before plaintiff fell). *Cf. Drew v. Istar Fin., Inc.*, 291 Ga. App. 323, 325-26 (1), (2) (661 SE2d 686) (2008) (holding that plaintiff failed to present proof that puddle of rainwater presented an unreasonable risk of harm or that the defendant had superior knowledge of the puddle when there was no evidence as to how long the puddle was on the ground or that the defendant had been previously warned about the puddle); *Roberts*, 283 Ga. App. at 270 (holding that plaintiff failed to present evidence that "water accumulation" at restaurant's entrance was "unusual" when witnesses merely testified that the floor near the entrance was "wet" shortly after rain had stopped outside, and when plaintiff "was unable to say with certainty that rain water caused him to slip").

8

There is likewise a genuine issue of material fact as to whether Hazard exercised ordinary care when she testified that she did not see any accumulated water when arriving and slipped in a puddle after stepping from the mat and turning in response to a friend calling her name. As our Supreme Court has recognized, the "routine" issues of premises liability—*i.e.*, "the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety"—are *typically* not susceptible of summary adjudication, but is appropriately granted "when the evidence is plain, palpable, and undisputed."[13] And looking continuously, without intermission, for defects in a floor is "not required in all circumstances."[14] Suffice it to say, what is a reasonable lookout "depends on all the circumstances at the time and place."[15] And given the foregoing evidence, a jury must determine whether Hazard exercised ordinary care in this case.[16]

---

[13] *Dickerson*, 282 Ga. at 771-72; *accord Robinson*, 268 Ga. at 749 (2) (B).

[14] *Edwards*, 234 Ga. App. at 67 (2); *accord Smith*, 233 Ga. App. at 192 (2).

[15] *Edwards*, 234 Ga. App. at 67 (2); *accord Smith*, 233 Ga. App. at 192 (2).

[16] *See Edwards*, 234 Ga. App. at 67 (2) (holding that a jury question remained as to whether the plaintiff exercised ordinary care); *Smith*, 233 Ga. App. at 192 (2) (same).

For all these reasons, we reverse the trial court's grant of summary judgment in favor of the Tavern.

*Judgment reversed. Mercier and Markle, JJ., concur*.